UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

AMIT SHAH and TIM DUGLE,                )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )       CAUSE NO. 3:13-CV-103-JD-CAN
                                        )
TERRY RODINO, *et al.*,                 )
                                        )
        Defendants.                     )

**ORDER**

On April 16, 2013, the Court heard oral argument from Plaintiffs, Amit Shah and Tim

Dugle, and Defendants, Terry Rodino; Stacey Rodino; Allison Rodino Bailey; Duro, Inc., d/b/a

Lee's Wood Products; Duro Recycling, Inc., d/b/a Recycled/New; Duro Realty, Inc.; and Duro

Transport, Inc.; Aaron Zou; Apex Pallet, Inc.; Lucky Lou LLC; 2610 LLC; American Travel

Palace LLC; and ATP Exports, Inc., represented by counsel to resolve the following three

interrelated motions before the Court:  (1) Plaintiffs' Motion to Disqualify [Doc. No. 15]; (2)

Plaintiffs' Emergency Motion for the Appointment of a Receiver [Doc. No. 22]; and (3)

Plaintiffs' Motion for Expedited Discovery [Doc. No. 25].  The Court announced from the bench

a preliminary ruling addressing all three motions as summarized below.  However, the Court will

first address a tangential procedural issue that arose with the filing of briefs in response to the

three motions.

On April 11, 2013, Defendants, Terry Rodino; Duro, Inc., d/b/a Lee's Wood Products;

Duro Recycling, Inc., d/b/a Recycled/New; Duro Realty, Inc.; and Duro Transport, Inc.

(collectively "the Duro Entities"), filed responses in opposition to Plaintiffs' three motions under

seal. [Doc. Nos. 45, 46, & 47].  Generally, "[t]he clerk may not maintain a filing under seal

unless authorized to do so by statute, court rule, or court order." N.D. Ind. L.R. 5-3(a). This limitation comports with Fed. R. Civ. P. 5.2(d), which states that "[t]he court may order that a filing be made under seal without redaction." Requiring a court order to seal documents serves to protect the public interest in open and transparent proceedings in the courts. The option of sealing documents, however, is also critical to protect parties from harms that may result from public disclosure of sensitive information. Considering the public and private interests at stake, the Northern District of Indiana requires parties wishing to file a document under seal to electronically file a motion to seal with the sealed document. *See* N.D. Ind. L.R. 5-3(c)(1) (referring parties in civil cases to the *CM/ECF User Manual* for instruction on filing a sealed document). The document remains sealed pending the court's decision on the motion to seal. The parties are therefore protected from public disclosure until the court determines whether proper legal grounds exist for maintaining the document under seal.

In this case, the Duro Entities filed three response briefs as "sealed documents," but did not file accompanying motions to seal as required by the Local Rules. This Court refuses to hold the briefs under seal without any legal justification to do so. However, the Court acknowledges that the Duro Entities may have legitimate reason, though now unknown, to prevent public disclosure of the briefs. Therefore, the Court **AFFORDS** counsel for the Duro Entities one week to electronically file motions to seal the response briefs. If motions to seal are not received by **April 29, 2013**, the Court will order the briefs unsealed.

With that preliminary matter resolved, the Court now turns to consideration of Plaintiffs' three motions.

I.      **Relevant Background**[1]

This case, although only recently filed in this Court, has a long litigation history in state court.  At its core, this case is a business dispute between the majority and minority shareholders over the management and direction of the corporations.  Plaintiffs are the minority shareholders of the Duro Entities.  Defendant, Terry Rodino, is the majority shareholder of the Duro Entities.  These parties have been involved in litigation in state court since 2004, when Plaintiff Dugle sued Rodino alleging breach of fiduciary duty, conversion, and deception.  In September 2010, Plaintiff Shah sued Rodino seeking an audit of the financial records of the Duro Entities.  Shah filed a third lawsuit against Rodino in September 2011.  All three actions have been consolidated into a single action now nearing trial before the LaGrange Circuit Court in Indiana ("state court").  The Firm has represented both Rodino and the Duro Entities throughout and the Duro Entities have compensated the Firm for their representation of both Rodino and the Duro Entities.

A major issue in the state court action was and continues to be completion of an audit of the Duro Entities' financial records.  In December 2012, the parties agreed to the appointment of an independent financial manager[2] to procure, compile, and review Duro documents necessary for the audit.  The state court's order named Crossroads as the financial manager and expired on March 30, 2013, but indicated that the order could be extended for good cause shown by Plaintiffs.

---

[1]At the hearing, the undersigned disclosed that the Firm represented him in 2004 with regard to his personal estate plan and that the Firm has not represented him since in any other matter.  None of the parties objected to the undersigned's continued adjudication in this matter.

[2]As described by the parties at the hearing, the financial manager's role was similar to that of a receiver, but was with a more limited role.  The title was agreed upon after Defendants objected to the term "receiver."

3

Before the court's order expired, without seeking relief from the state court regarding a dispute over documents withheld from the financial manager, and without seeking an extension of the order to appoint a financial manager, Plaintiffs initiated this action on February 14, 2013. In their complaint, Plaintiffs assert claims of RICO violations, fraud, conversion, deception, breaches of fiduciary duty, and unjust enrichment against the Duro Entities. The Firm has appeared in this case on behalf of both Rodino and the Duro Entities as well. Before Defendants filed their first responsive pleading in the form of a motion to dismiss on April 3, 2013, Plaintiffs filed the three instant motions seeking to disqualify the Firm, to appoint a receiver, and to allow expedited discovery related to the motion to appoint a receiver.

II.    **Plaintiffs' Motion to Disqualify May Oberfell Lorber and Its Attorneys from Representing the Duro Entities, Doc. No. 15**

On March 26, 2013, Plaintiffs filed a Motion to Disqualify May Oberfell Lorber ("the Firm") and Its Attorneys From Representing the Duro Entities. On April 11, 2013, the Duro Entities a response in opposition to Plaintiffs' motion. No reply brief was filed.

A.    **Standard of Review**

The Seventh Circuit warns that disqualification is a device used to protect the attorney-client relationship and is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Cromley v. Bd. of Ed. of Lockport Twp. High Sch. Dist. 205,* 17 F.3d 1059, 1066 (7th Cir.1994) (quoting *Freeman v. Chi. Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir.1982)). Motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman,* 689 F.2d at 722. A district court possesses "broad discretion" in determining whether disqualification is required in a particular case. *In re Neely*, 2:11-CV-140-JTM-PRC, 2012 WL 1714415 (N.D. Ind. May 14, 2012) (citing *Cardenas*

4

*v. Benter Farms,* No. IP 98–1067–C T/G, 2001 WL 292576, at * 1 (S.D. Ind. Feb.7, 2001) (quoting *Whiting Corp. v. White Mach. Corp.,* 567 F.2d 713, 715 (7th Cir.1977))).  The party seeking disqualification bears the burden of showing facts requiring disqualification.  *Id.* at *1. This Court demands that parties seeking disqualification in any case meet this heavy burden. The Court will not order disqualification without such facts, especially in cases like this one where the attorneys involved are well-respected in the profession and include a former Indiana State Bar Association President.  The Court presumes that attorneys understand their ethical obligations and take them seriously.

The Rules of Professional Conduct as adopted by the Indiana Supreme Court, along with the Standards for Professional Conduct adopted by the Seventh Circuit, provide the standard of conduct for those practicing in this Court.  N.D. Ind. Local Rule 83–5(e).  Plaintiffs invoke Rules 1.7 and 1.13 of the Indiana Rules of Professional Conduct in seeking disqualification of the Firm.   Rule 1.7 of the Indiana Rules of Professional Conduct regarding concurrent conflicts of interest states as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

5

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Concurrent representation of parties is not a *per se* violation of Rule 1.7. *Hanna v. Indiana*, 714 N.E.2d 1162, 1167–68 (Ind. Ct. App. 1999). In determining whether a particular instance of concurrent representation creates a conflict of interest in violation of Rule 1.7, a court must consider "the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Ind. Rules of Prof'l Conduct R. 1.7 cmt. 8.

Rule 1.13 of the Indiana Rules of Professional Conduct regarding organizations as clients states as follows:

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

(b) If a lawyer for an organization knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law which reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is reasonably necessary in the best interest of the organization. Unless the lawyer reasonably believes that it is not necessary in the best interest of the organization to do so, the lawyer shall refer the matter to higher authority in the organization, including, if warranted by the circumstances to the highest authority that can act on behalf of the organization as determined by applicable law.

. . . .

(g) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7.  If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

Rule 1.13 does not preclude attorneys from representing both a corporation and an officer or shareholder simultaneously.  In fact, the rule allows such representation, but establishes requirements for attorneys if certain situations exist.

**B.      Analysis**

In this case, Plaintiffs assert that the Firm's concurrent representation of Terry Rodino and the Duro Entities creates a conflict of interest under Rule 1.7.  Plaintiffs rely upon the allegations included in their complaint to support their contention that a conflict that materially limits the Firm's ability to fulfill its responsibilities to both Rodino and the Duro Entities exists.  Specifically, Plaintiffs suggest that Duro Entities' interest in ferreting out the party responsible for alleged mismanagement of Duro Entities' funds puts them at odds with the interests of Rodino who they allege engaged in that mismanagement.

In addition, Plaintiffs assert that the Firm knew of Rodino's alleged misconduct and his alleged intent to continue mismanaging the Duro Entities' funds to his personal benefit, which should have led the Firm to disassociate with Rodino in order to proceed in the best interests of the organizations under Rule 1.13(b).  Furthermore, Plaintiffs question the Firm's continued dual representation of the Duro Entities and Rodino, the majority shareholder, without the consent of the minority shareholders, Shah and Dugle, under Rule 1.13(g).

The key question in determining whether disqualification for violation of Rules 1.7 and 1.13 is appropriate in this case is whether the Plaintiffs, as movants, have supported their claims of ethical violations with factual evidence. They have not. Plaintiffs' counsel admitted as much when at the hearing they stated that (a) there is no *pro se* violation of Rules 1.7 and 1.13 [Mot. Hr'g Tr. 16:22–23, Apr. 16, 2013]; and (b) that they are only surmising that a violation of the rules has occurred based on the allegations presented in their complaint [*Id.* at 17:8–20:14]. Plaintiffs' counsel told the Court that the Firm's conflict prevented them from gathering facts during discovery in the underlying state court case that would justify disqualification. Plaintiffs argued, however, that they expected to discover facts through discovery in this case and that they believed that the risks associated with the Firm's dual representation were sufficient to support their motion for disqualification. Plaintiffs directed the Court to *In re Shirley*, 930 N.E.2d 1135, 1136 (Ind. 2010), a disciplinary action against an attorney, to support the proposition that the risk of harm to the corporation caused by the Firm's dual representation of the Duro Entities and Rodino as the majority shareholder should have been apparent. Plaintiffs argue that such apparent risk to the Duro Entities is sufficient justification for disqualification of the Firm.

The Court concedes that special consideration may be needed when dealing with conflicts among shareholders of a close corporation. However, the facts in *In re Shirley* can be distinguished from those in this case. In *In re Shirley*, the attorney involved, who represented both the majority shareholder and the corporation, had represented the majority shareholder for many years in multiple actions designed specifically to wrest control away from the minority shareholders and to secure sole control of the close corporation for the majority shareholder. *Id.* at 1135. These actions caused considerable detriment to the corporation. *Id.* at 1136. The court

held that in light of the nature of the actions initiated by the majority shareholder, it should have been apparent to counsel that the majority shareholder's interests were potentially adverse to the interests of the corporation. *Id.* at 1136. Here, Rodino's and the Duro Entities' interests are not as apparently adverse. The only facts available suggest that just the opposite—that Rodino's and the Duro Entities' interests are aligned.

While it is true that the Firm has represented both Rodino and the Duro Entities for a considerable amount of time, the corporation has not suffered any apparent detriment as a direct result of that dual representation. In fact, the Duro Entities have enjoyed record profits in recent years, a fact that Plaintiffs do not deny. In addition, the Court turns once again to the admission of Plaintiffs' counsel at the hearing that they lack facts to support their allegation of such apparent conflict. Without such facts, Plaintiffs' have failed to lay the foundation necessary to justify disqualification of the Firm and their request for disqualification fails as a matter of law. Plaintiffs' motion for disqualification is premature.

Plaintiffs argue that they lack the necessary facts because Defendants inappropriately withheld that information during discovery in the underlying state court action. Plaintiffs further identify the Firm's dual representation of Rodino and the Duro Entities as the cause of Defendants' inappropriate withholding of information. Plaintiffs could have sought discovery sanctions against Defendants in state court, but elected instead to seek a stay in the state court action and proceed with litigation of all issues in the action they filed in this Court. The Court recognizes the litigation strategy and appreciates Plaintiffs' efforts to avoid simultaneous litigation in two jurisdictions. However, that decision cost Plaintiffs. Through discovery motions in state court, Plaintiffs may have been able to secure the facts they need for the instant

motion for disqualification.  Their failure to seek relief in the state court action now prevents

them from prevailing on the instant motion for disqualification.

Therefore, because Plaintiffs have not established sufficient facts, the Court **DENIES**

Plaintiffs' motion to disqualify the firm. [Doc. No. 15].

### III.     Plaintiffs' Motion for the Appointment of a Receiver, Doc. No. 22

On April 2, 2013, Plaintiffs filed a Motion for the Appointment of a Receiver.  On April

11, 2013, the Duro Entities filed a response in opposition to Plaintiffs' motion.  Related to

Plaintiffs' motion, Defendant, Aaron Zou, filed a Limited Objection to Plaintiffs' Motions for

Appointment of Receiver and for Expedited Discovery on April 15, 2013.[3]  Plaintiffs did not file

a reply brief.

### A.     Standard of Review

"Appointment of a receiver is an extraordinary remedy and a court should exercise its

discretion to appoint a receiver with 'care and caution.'"  *Regions Bank v. R & D Dev. Corp.*,

CIV. 10-759-GPM, 2011 WL 2149086, *3 (S.D. Ill. May 31, 2011) (citing *Connolly v.*

*Gishwiller,* 162 F.2d 428, 435 (7th Cir.1947)); *see also Crippin Printing Corp. v. Abel*, 441

N.E.2d 1002, 1005 (Ind. Ct. App. 1982).  "Federal Rule of Civil Procedure 66 provides that

federal law applies to the appointment of a receiver in a federal court action, but the court may

look to underlying state law for guidance in shaping relief."  *Fifth Third Bank v. Double Tree*

*Lake Estates, LLC*, 2:11-CV-0233-PPS-PRC, 2012 WL 1900123, at *2 (N.D. Ind. May 23, 2012)

(citing *Houseware Sales Corp. v. Quaker Stretcher Co.,* 70 F. Supp. 747, 750 (E.D.Wis.1947)).

---

[3]The Court notes Mr. Zou's response indicating that he filed no objection to Plaintiffs' motion to appoint a
receiver because he has no standing to do so and does not construe his silence as consent to or agreement with
Plaintiff's motion. *See* Doc. No. 49.  Because Mr. Zou lacks standing, no further analysis of his response is
necessary in consideration of Plaintiffs' motion to appoint a receiver.

Under Indiana law, "three things must be shown before a receiver may be appointed: '(1) An emergency must be shown to exist such that the management and operation of a corporation must be taken over at once from those in control[,] (2) Irreparable damage and injury must result unless a receiver is appointed, and (3) There must be no adequate remedy otherwise available.'" *City of S. Bend v. Century Indem. Co.*, 821 N.E.2d 5, 14 *decision clarified on reh'g,* 824 N.E.2d 794 (Ind. Ct. App. 2005) (quoting *Lafayette Realty Corp. v. Moller,* 247 Ind. 433, 215 N.E.2d 859, 862 (Ind. 1966)).

###### B.      Analysis

In their motion, Plaintiffs argue that an emergency exists because Rodino is engaged in ongoing misappropriation of the Duro Entities' money through Defendants, Apex Pallet, Lucky Lou, and 2610 LLC as well as diverting money to the Firm for representing Rodino.  In addition, Plaintiffs argue that continued misappropriation by Rodino will lead to irreparable damage to the Duro Entities in the form of significant, ongoing losses.  And lastly, Plaintiffs argue that they can get complete relief in any other way because Rodino continues to hide Duro Entities' assets, scheme to dissipate Duro Entities' funds, and systematically delay litigation.

Plaintiffs arguments for a receiver are all for nought, however, because they do not have evidence to support these allegations.  At the hearing, Plaintiffs admitted that while they have some evidence, they do not want the Court to make a determination on their motion to appoint a receiver until after they complete expedited discovery to gather the rest of the facts necessary to support appointment of a receiver and after an evidentiary hearing.  [Mot. Hr'g Tr. 34:22–35:10].  Through this statement, Plaintiffs have essentially shown that they lack the evidence necessary to support appointment of a receiver at this time.  Without that evidence, the Court refuses to

11

appoint a receiver.  No further analysis is needed, although it is worth pointing out that Plaintiffs

have also failed to present evidence of irreparable harm to the Duro Entities by admitting that

they cannot quantify the losses to Duro Entities, which is currently quite profitable. [Doc. No. 23

at 21].  Moreover, because the Duro Entities are currently so profitable, there really is little risk

that Plaintiffs could not be fully compensated in the event of resolution in their favor in this

matter.  The Court acknowledges that the location of allegedly misappropriated assets may be

unknown, but notes that tracking those funds down to ensure fulfillment of any judgment could

be handled effectively through proceedings supplemental.

Therefore, because Plaintiffs have not established sufficient facts to demonstrate an

emergency, irreparable harm, or lack of complete remedy, the Court **DENIES WITHOUT**

**PREJUDICE** Plaintiffs' motion to appoint a receiver. [Doc. No. 22].  Plaintiffs may renew their

motion when they have sufficient facts to support appointment of a receiver.

## IV.    Plaintiffs' Motion for Expedited Discovery, Doc. No. 25

On April 2, 2013, Plaintiffs filed a Motion for Expedited Discovery.  On April 11, 2013,

the Duro Entities Defendants filed a response in opposition to Plaintiffs' motion.  On April 15,

2013, Plaintiffs filed a reply.  Also on April 15, 2013, Defendant Zou filed a Limited Objection

to Plaintiffs' Motions for Appointment of Receiver and for Expedited Discovery.

### A.    Standard of Review

"A party may not seek discovery from any source before the parties have conferred as

required by rule 26(f) . . . or when authorized . . . by court order."  Fed. R. Civ. P. 26(d).  "Many

courts require a party seeking discovery outside the normal timeframes to establish good cause

for expediting discovery."  *Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, 1:10-CV-

01718-SEB, 2011 WL 130098, at *3 (S.D. Ind. Jan. 14, 2011).  A pending motion for a preliminary injunction or appointment of a receiver may provide the good cause necessary to justify expedited discovery.  *See id.*  However, the court must consider the facts and circumstances of the particular matter to determine whether expedited discovery is appropriate to ensure a fair adjudication of the issues before the court.  *Id.*

    **B.**    **Analysis**

    In this case, Plaintiffs fail to establish good cause for expedited discovery.  Plaintiffs arguments are directly related, and sometimes identical, to arguments they raised relative to the motions for disqualification and appointment of a receiver.  Primarily, Plaintiffs wish to engage in expedited discovery to uncover facts sufficient to support appointment of a receiver.  However, Plaintiffs have failed to establish sufficient urgency or irreparable damage to justify taking this case out of the mainstream of federal litigation, which allows discovery only after the parties' Rule 26(f) conference.

    First, the Court notes that there is a motion to dismiss pending before this Court.  As disclosed at the hearing, the undersigned is predisposed to deny any request for discovery when motions to dismiss are pending in order to avoid unnecessary burden and expense on the parties from discovery that might be unnecessary should the motion be granted.  In this case, the pending motion to dismiss and Defendants' high level of confidence that they are going to succeed suggest that the expedited discovery is not as urgent as Plaintiffs believe.

    Second, the Court is not convinced that if Plaintiffs succeed in establishing Defendants' liability for the claims in this action, the Duro Entities assets would be dissipated completely.  The Duro Entities appear to be viable and profitable corporations such that Plaintiffs could find

money to satisfy any judgment, even if it required discovery through proceedings supplemental to do it.

Third, the Court finds Plaintiffs' conduct inconsistent with their argument. Plaintiffs turned to this Court seeking appointment of a receiver and expedited discovery to justify such extraordinary action without seeking relief available in the underlying state court action. If the situation faced by Plaintiffs was so urgent, they could have filed a motion to compel discovery in the state court action. In addition, Plaintiffs could have asked the state court to renew the term of the financial manager already appointed in that case. Instead, Plaintiffs elected to pursue these matters in this Court, which necessarily delayed resolution of the primary concerns that Plaintiffs are trying to convince this Court are very urgent. Plaintiffs made a strategic litigation decision that belies the urgency of their argument for expedited discovery.

Therefore, because Plaintiffs have failed to establish that expedited discovery is justified when there is a pending motion to dismiss in this case, when dissipation of the Duro Entities' assets is unlikely, and when they could have sought quicker relief on the same matters in state court, Plaintiffs' motion for expedited discovery is **DENIED**. [Doc. No. 25]. Because the Court is denying Plaintiffs' motion, the Court need not address the concerns raised by Defendant Zou.

## IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion to disqualify. [Doc. No. 15]. The Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to appoint a receiver. [Doc. No. 22]. And the Court **DENIES** Plaintiffs' motion for expedited discovery. [Doc. No. 25].

In addition, the Court now addresses the Duro Entities' Motion for Extension of Time to Respond to Plaintiffs' Motion to Disqualify May Oberfell Lorber and Its Attorneys from Representing the Duro Entities and Plaintiffs' Motion for the Appointment of a Receiver filed on April 5, 2013.   Because the Duro Entities filed responses to both motions on April 11, 2013, and because the Court resolved both motions in its ruling above, the Duro Entities' motion for extension of time to respond is **DENIED AS MOOT**. [Doc. No. 40].

**SO ORDERED.**

Dated this 22nd day of April, 2013.

 s/Christopher A Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge