UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMIT SHAH, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:13-CV-103 JD-CAN |
| | ) |
| TERRY RODINO, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This case stems from a business dispute between majority and minority shareholders of several closely held corporations, which the Plaintiffs refer to as the "Duro Entities." [DE 1 ¶ 6.] The Plaintiffs are Amit Shah and Tim Dugle. On February 14, 2013, they filed a complaint against thirteen Defendants. Their complaint is long—79 pages, containing 385 numbered paragraphs and 285 pages of exhibits—and alleges eleven claims, arising both under federal law and Indiana state law. This case is not the first dispute between these parties. Instead, there appears to be a long history of litigation—both in Indiana state and federal court—between these parties alleging similar conduct.

The Defendants are Terry Rodino; Stacy Rodino; Allison Rodino Bailey; Aaron Zou; Duro, Inc. d/b/a Lee's Wood Products ("Duro"); Duro Recycling, Inc. d/b/a Recycled/New ("Duro Recycling"); Duro Realty, Inc. ("Duro Realty"); Duro Transport, Inc. ("Duro Transport"); Apex Pallet, Inc. ("Apex Pallet"); Lucky Lou, LLC ("Lucky Lou"); 2610 LLC ("2610"); American Travel Palace, LLC ("ATP"); and ATP Exports, Inc. ("ATP Exports").[1] The claims are brought under the Racketeer Influenced and Corrupt Organizations ("RICO")

---

[1] Duro, Duro Recycling, Duro Realty, and Duro Transport are the entities collectively referred to by the Plaintiffs as the "Duro Entities." [DE 1 ¶ 6.] For ease of reference, the Court will adopt this terminology as well.

Act, 18 U.S.C. § 1962(a), (c), & (d) [Counts I–V]; the federal money laundering criminal statute, 18 U.S.C. § 1956 [Count VI]; and for fraud [Count VII]; conversion [Count VIII]; deception [Count IX]; breach of fiduciary duty [Count X]; and unjust enrichment [Count XI]. [DE 1 at 61–76.]

On April 3, 2013, Mr. Rodino and the Duro Entities filed a motion to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim. [DE 31, 32] On April 5, 2013, Ms. Rodino, Ms. Rodino Bailey, Apex Pallet, Lucky Lou, 2610, ATP, and ATP Exports moved to join in that motion to dismiss. [DE 38.] On April 10, 2013, Mr. Zou also moved to join in that motion to dismiss. [DE 42, 43.] On May 2, 2013, Plaintiffs filed a joint response in opposition to the motion to dismiss. [DE 56.] On May 9, 2013, Mr. Zou filed a reply in support of the motion to dismiss. [DE 58.] On May 13, 2013, Mr. Rodino and the Duro Entities filed a reply in support of the motion to dismiss. [DE 60.] The motion to dismiss is ripe for decision.

As a housekeeping matter, the motions to join in the motion to dismiss filed by Mr. Rodino and the Duro Entities are **GRANTED**. [DE 38, 42.] The Court will consider the arguments contained in the motion to dismiss as if raised by each of the Defendants.

One recent development also deserves attention. On March 11, 2014—while the motion to dismiss was pending—the Plaintiffs filed an amended complaint. [DE 63.] The amended complaint was filed without leave of the Court. On March 12, 2014, Plaintiffs filed a Notice stating that they believe they had a right to amend the complaint without leave of the Court. [DE 64.] Plaintiffs further stated in the notice that they believe the filing of the amended complaint renders the Defendants' motion to dismiss moot, "as the basis for the motion to dismiss has been addressed in the Amended Complaint." [DE 64 at 2.] On March 14, 2014, several defendants filed an objection to the filing of the amended complaint. [DE 65.] On March 17, 2014, Mr.

Rodino and the Duro Entities filed a motion to strike the amended complaint. [DE 67.] Before reaching the merits of the motion to dismiss, the Court will consider what effect, if any, the purported filing of the amended complaint has on the pending motion to dismiss.

## I. Validity of the Amended Complaint

Plaintiffs purported to file an amended complaint under Federal Rule of Civil Procedure 15(a). They believe that Rule 15(a) expressly grants them "the opportunity to amend [the] complaint 'once as a matter of course before being served with a responsive pleading.'" [DE 64 at 1 (purporting to quote Fed. R. Civ. P. 15(a)).] However, Plaintiffs' argument is not correct.

In the past, Rule 15 allowed a plaintiff one opportunity to amend his or her complaint as a matter of course before a responsive pleading was served. *See Camp v. Gregory*, 67 F.3d 1286, 1289 (7th Cir. 1995). However, Rule 15 was amended in 2009. After the 2009 amendments, the time in which a plaintiff can amend his or her complaint is more limited. Specifically, Rule 15(a) now states:

> A party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after the service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a). Thus, by the plain text of the rule, Plaintiffs' ability to amend their complaint as a matter of right terminated 21 days after the service of the first motion to dismiss. That time has long since passed.

Accordingly, the Amended Complaint [DE 63] is not an operative pleading and does not moot the Court's need to address the Defendants' motion to dismiss. The Court will therefore address the merits of the motion to dismiss below. Additionally, because it was filed without leave of the Court, the Court **GRANTS** the Motion to Strike [DE 67] and **STRIKES** Plaintiffs'

3

Amended Complaint [DE 63]. The Court will grant Plaintiffs leave to file an amended complaint that complies with this opinion, as set forth more fully below.

## II. Factual Background

In 1997, Mr. Rodino, Mr. Dugle, and William Haut purchased an existing wood pallet business called Lee's Wood Products. [DE 1 ¶ 15.] They incorporated the business under the name Duro, which is a combination of the last names of Mr. Dugle and Mr. Rodino. [*Id.* ¶¶ 16–17.] Mr. Rodino was in charge of operations and sales and owned 72% of the Duro shares. [*Id.* ¶¶ 17, 20.] Mr. Dugle was in charge of the company's financing, accounting, and general business and owned 23% of the Duro shares. [*Id.*] Mr. Haut was the legal counsel for the company and owned 5% of the Duro shares. [*Id.* ¶¶ 17, 20] In 1999, Mr. Rodino and Mr. Dugle incorporated Duro Realty, which holds the title to the building in which Lee's Wood Products is operated. [*Id.* ¶ 21.]

In February 2000, Mr. Rodino and Mr. Dugle purchased another pallet business, Recycled/New, which purchased, recycled, and then sold used pallets. [*Id.* ¶ 22.]. That business was incorporated under the name Duro Recycling, with Mr. Rodino owning 46% of the shares, Mr. Dugle owning 44% of the shares, Mr. Haut owning 5% of the shares, and David Schnell owning 5% of the shares. [*Id.* ¶ 23.] The roles of Mr. Rodino, Mr. Dugle, and Mr. Haut with respect to Duro Recycling were the same as their roles with respect to Duro. [*Id.* ¶ 24.] In March 2000, Duro Transport was incorporated to hold title to the trucks and other assets of Duro and Duro Recycling. [Id. ¶ 25.]

The parties appear to have had a productive business relationship until approximately May 2003. Plaintiffs allege that, starting at that time, Mr. Rodino attempted to freeze out Mr. Dugle from the operation of the Duro Entities. [*Id.* ¶ 26]. Mr. Dugle was terminated from his

employment and his salary and car lease were terminated. [*Id.* ¶¶ 27–28.] Mr. Dugle was also removed as the Registered Agent and Secretary of Duro and Duro opened a different bank account to which Mr. Dugle did not have access. [*Id.* ¶¶ 29, 32.] Mr. Dugle made an offer to sell his shares in the Duro Entities to Mr. Rodino, but they could not agree on a valuation of the shares. [*Id.* ¶ 33.] Mr. Haut sold his shares of Duro and Duro Recycling to Mr. Rodino, giving Mr. Rodino 77% of the shares in Duro and 51% of the shares in Duro Recycling. [*Id.* ¶ 34–35.] Duro then made a capital call, in response to which Mr. Dugle paid an additional $40,000 in capital. [*Id.* ¶ 37.] Mr. Dugle has not received any distributions from the Duro Entities since 2003. [*Id.* ¶ 38.]

In 2004, Mr. Dugle purported to transfer the majority of Mr. Dugle's shares in the Duro Entities to Mr. Shah. [*Id.* ¶ 39.] At some later time, Mr. Rodino revised the by-laws for the Duro Entities to add a right of first refusal in the event that any shareholder attempted to sell his shares to anyone other than an existing shareholder. [*Id.* ¶ 40]. Mr. Rodino then objected to Mr. Dugle's transfer of shares to Mr. Shah. [*Id.* ¶ 41.] The transfer was the subject of a previous lawsuit in this Court, in which Mr. Dugle sought a declaratory judgment that the transfer of his shares was valid. *Dugle v. Duro, Inc.*, 461 F. Supp. 2d 942 (N.D. Ind. 2007). That lawsuit was dismissed for lack of subject matter jurisdiction. *Id.* at 945–46. Eventually, Mr. Rodino withdrew his objection to the transfer, and the majority of Mr. Dugle's shares were transferred to Mr. Shah. [DE 1 ¶ 42.]

The allegations of post-2004 conduct are only partially relevant to the issues addressed in this order, and so the Court only summarizes them. Plaintiffs allege that Mr. Rodino shifted business between the Duro Entities and comingled resources between the businesses, which was to Mr. Rodino's benefit due to his larger stake in Duro than in Duro Recycling. [*Id.* ¶¶ 43–49.]

They allege he formed a new company, Apex Pallet, which he used to divert business and resources away from the Duro Entities. [*Id.* ¶¶ 51–64.] They further allege that Mr. Rodino engaged in related-party transactions and attempted to hide the scheme through acts of mail fraud and wire fraud. [*Id.* ¶¶ 65–88.]

Plaintiffs allege that Mr. Rodino created new businesses with the proceeds of the Duro Entities, including Lucky Lou and 2610. [*Id.* ¶¶ 91–121.] They allege Mr. Rodino engaged in other financial improprieties [*id.* ¶¶ 122–149] and improperly diverted resources from the Duro Entities for personal purposes [*id.* ¶¶ 27–28]. They allege further activities taken to conceal the scheme. [*Id.* ¶¶ 197–202.]

Finally, Plaintiffs allege a conspiracy between Mr. Rodino, Mr. Zou, and others related to RV sales to China. They allege that Mr. Rodino—who is an elected Commissioner of Elkhart County—used his influence to create a sister-city relationship between Elkhart and a Chinese province, created businesses (ATP and ATP Exports) which sold RVs to China, and did so through various acts of mail fraud, wire fraud, and money laundering (with, apparently, the assistance of various Elkhart County officials). [*Id.* ¶¶ 207–284.]

On these facts, Plaintiffs bring eleven claims, including five claims under the RICO Act.

### III. Standard of Review

Rule 12(b)(1) authorizes dismissal of claims over which the court lacks subject matter jurisdiction. In analyzing a motion to dismiss, the court must accept as true all well-pled factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.*

(citations omitted).  The burden of establishing proper federal subject matter jurisdiction rests on the party asserting it.  *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

Rule 12(b)(6) authorizes dismissal of a complaint when it fails to set forth a claim upon which relief can be granted.  Generally speaking, when considering a Rule 12(b)(6) motion to dismiss, courts must inquire whether the complaint satisfies the "notice-pleading" standard.  *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012).  The notice-pleading standard requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide "fair notice" of the claim and its basis.  *Id*. (citing Fed. R. Civ. P. 8(a)(2)); *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (citations omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  In determining the sufficiency of a claim, the court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor.  *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (citation omitted).

The Supreme Court has adopted a two-pronged approach when considering a Rule 12(b)(6) motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Twombly*).  First, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth.  *Id*.  This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Second, if there are well-pleaded factual allegations, courts should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011) (citing *Iqbal* and *Twombly*). The complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Maddox*, 655 F.3d at 718 (citations omitted). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp.*, 665 F.3d at 935 (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. In order to satisfy the plausibility standard, a plaintiff's complaint must "supply enough fact to raise a reasonable expectation that discovery will yield evidence supporting the plaintiff's allegations." *Id*. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *see Iqbal*, 556 U.S. at 679 (citation omitted), and the Court will assess the Plaintiffs' claims accordingly.

## VI. Discussion

The motion to dismiss raises three arguments: (1) as minority shareholders, Plaintiffs lack standing to pursue RICO claims for damages sustained by the Duro Entities, (2) a federal criminal statute does not provide for a private cause of action, and (3) the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. [DE 32 at 5–10; DE 43 at 3–6.] The Court addresses each argument in turn.

### A. Standing to Bring Direct Civil RICO Claim

Individual shareholders do not generally have standing to pursue RICO claims for alleged racketeering activities conducted against a corporation unless it is brought through a derivative

shareholder suit. *See e.g., Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1336 (7th Cir. 1989) ("The district court recognized that shareholders, creditors, managers, lessors, suppliers, and the like cannot recover on account of injury done the corporation."); *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 959 (7th Cir. 1996) ("corporate shareholders did not have standing to bring RICO claims for racketeering activities conducted against the corporation because those claims are in reality derivative of the corporation's claims."); *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir. 1990) ("Shareholders of a corporation do not have standing as individuals to bring a RICO action for diminution in the value of their stock caused allegedly by racketeering activities… . In other words, a RICO claim is a corporate asset, not an individual one." (citations omitted)); *Lefkovitz v. Wagner* 395 F.3d 773, 776 (7th Cir. 2005) ("shareholders cannot maintain a RICO suit for injury to their corporation").

However, Indiana law creates a limited exception to the general rule requiring a derivative action for some lawsuits against closely held corporations. *Barth v. Barth*, 659 N.E.2d 559, 561 (Ind. 1995). The Indiana Supreme Court explained:

> In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative action, and order an individual recovery if it finds that to do so will not (i) unfairly expose the corporation or defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Id*. at 562. Where these factors are not at issue, the court may allow a direct action in place of derivative action. *See G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227 (Ind. 2001) (allowing a direct action suit to be filed by shareholders in a closely held corporation where *Barth* factors posed no concern); *see also Cutshall v. Barker*, 733 N.E.2d 973 (Ind. Ct. App. 2000) (allowing shareholders of a closely held corporation to pursue RICO claims as a direct action when the risk

9

of multiple actions was not present, no creditors would be harmed, and the direct action would not interfere with the distribution of the recovery). However, the "*Barth* court cautioned that the exception does not abrogate the [general] rule." *Hubbard v. Tomlinson*, 747 N.E.2d 69, 72 (Ind. Ct. App. 2001).

Indiana courts have also recognized an exception to the exception. Where a lawsuit alleges claims against third parties, seeking to recover for injuries sustained by a corporation, a direct action is typically barred. *Hubbard*, 747 N.E.2d at 72 (requiring lawsuit against close corporation to be brought derivatively); *Miller v. Up In Smoke, Inc.*, 738 F. Supp. 2d 878, 884 (N.D. Ind. 2010) (citing *Hubbard* and finding claims against close corporation could only be brought derivatively).

With this guidance, the Court turns to determining whether Plaintiffs' claims are properly classified as derivative claims and, if so, whether it should exercise discretion to allow the claims to be brought in a direct action. Starting with the nature of the claims, the damages alleged by Plaintiffs are harm to the Duro Entities. While Plaintiffs argue that they seek damages for injuries both to the Duro Entities and to themselves individually [DE 56 at 11–12], the Court cannot locate any harm alleged in the complaint other than a diminution in the value of the Duro Entities.

Plaintiffs now seem to concede their claims are properly labeled as derivative. They spend several pages of their response to the motion to dismiss arguing they could bring derivative claims. [DE 56 at 17–23.] Additionally, the purported amended complaint, which has been stricken, attempted to plead derivative RICO claims on behalf of the Duro Entities. Based on the allegations in the operative complaint and the Plaintiffs' apparent concession, the Court

finds that Plaintiffs' claims are properly labeled as derivative claims and thus considers whether the *Barth* exception applies in this case.

*Barth* allows a court to exercise discretion to allow derivative claims to be brought directly if three factors are present: (1) the suit will not unfairly expose the defendants to a multiplicity of actions; (2) the suit will not materially prejudice the interests of creditors; and (3) the suit will not interfere with a fair distribution of the recovery among all interested persons. *Barth*, 659 N.E.2d at 562.

The Court finds each factor problematic in this case. With respect to the multiplicity problem, Plaintiffs argue that there is no risk that Mr. Rodino "will bring a suit against himself, his family members, his business partner, or his business entities on behalf of the Duro Entities." [DE 56 at 14.] While probably true with respect to Mr. Rodino and his business interests, the fact that Mr. Rodino currently has a positive business relationship with Mr. Zou and his family members certainly does not foreclose the possibility of future litigation (as this lawsuit helps to illustrate).

With respect to potential injury to creditors, Mr. Rodino affirms that the Duro Entities have between 40 and 50 creditors on any given day. [DE 31-2 at 2.] Plaintiffs argue that this evidence is insufficient. [DE 56 at 15]. However, the Court does grant it some limited weight in identifying that there are creditors of whom the Court must be mindful.

With respect to interference in the distribution of any recovery, Plaintiffs argue that all of the shareholders of the Duro Entities are parties to the lawsuit and that a derivative suit would itself lead to an unfair distribution due to Mr. Rodino's control of the entities. [DE 56 at 16.] The second argument begs the question. The first argument carries some weight, at least with respect to the potential of recovery against Mr. Rodino, which could be appropriately

11

apportioned. However, any damages obtained from third parties would be difficult to distribute in a direct action, since the claims are currently stated on behalf of only Mr. Shah and Mr. Dugle and Mr. Rodino's ownership stake in the Duro Entities could entitle him to a portion of any recovery if the claims were successful.

Even if the interests weighed in favor of the Court exercising its discretion to allow a direct action, the Court must still consider the *Hubbard* exception, barring direct actions on behalf of the corporation against third parties. Plaintiffs argue again that there is no risk of multiple actions. [DE 56 at 16–17.] The Court does not agree. Plaintiffs have named eight distinct third parties—Ms. Rodino, Ms. Rodino Bailey, Mr. Zou, Apex Pallet, Lucky Lou, 2610, ATP, and ATP Exports—who they allege have injured the Duro Entities. Mr. Zou specifically argues that he (and not Mr. Rodino) controls ATP and ATP Exports. [DE 58 at 5.] The Court does believe that the presence of the third parties in this litigation increases the risk of multiple actions.

For these reasons, the Court declines to allow Plaintiffs to bring their derivative claims in a direct action. While Plaintiffs argue their standing to bring a derivative action, those questions are not currently before the Court. The Court expressly states no opinion as to whether such claims are appropriate in this case. If they desire, Plaintiffs may amend their complaint to attempt to state derivative RICO claims. The Court will then address any issues raised in response to that pleading.

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** with respect to Counts I–V. Counts I–V are **DISMISSED** without prejudice, with leave to amend as described below.

## B. Claim Arising From Federal Criminal Statute

Next, Defendants argue that Plaintiffs' claims alleging violations of federal criminal statutes should be dismissed, since none of the cited criminal statutes provide for a private cause of action. [DE 32 at 8–10.] Plaintiffs respond that they are not attempting to plead any private cause of action for individual criminal acts, but rather seek to plead those claims for the purposes of proving predicate RICO acts. [DE 56 at 23.]

Plaintiffs further state "[t]his is plain given the fact that each count of Plaintiffs' complaint contains a title summarizing the claim and no such individual claims for the criminal acts have been plead as individual claims. The criminal conduct alleged is contained entirely within the RICO counts." [*Id.* at 23.] This statement seems to be at odds with the currently operative complaint. Specifically, Count VI alleges a violation of 18 U.S.C. § 1956 (the federal criminal statute prohibiting money laundering). [DE 1 at 70.] Based on this claim, the Court concludes that Plaintiffs have alleged—whether they intended to or not—one claim that hinges on whether or not there is a private cause of action arising from a federal criminal statute.

The Seventh Circuit does not appear to have addressed the issue of whether a private right of action is provided by section 1956, but several other courts have decided that issue. *United States v. Bergman*, No. 13-1299, 2013 WL 6728103, at *3 (10th Cir. Dec. 23, 2013) (finding no private cause of action under 18 U.S.C. § 1956); *Ingersoll v. El Paso Cnty. Child Support Enforcement*, No. 11-cv-2779, 2011 WL 6181432, at *3 (D. Colo. Dec. 13, 2011) (same); *Thomas v. Trott & Trott PC*, No. 10-13775, 2011 WL 576666, at *4 (E.D. Mich. Feb. 9, 2011) (same); *Kissi v. Panzer*, 664 F. Supp. 2d 120, 127 (D.D.C. 2009) (same); *Barrett v. City of Allentown*, 152 F.R.D. 50, 56 (E.D. Pa. 1993) (same). The Court agrees with the rationale of

these cases and finds that no private cause of action is contained within the federal money laundering statute.

Whether intended or not, Count VI states that it is a claim based on a federal criminal statute that provides no private cause of action. Accordingly, Count VI is **DISMISSED**, without prejudice to Plaintiffs' ability to allege money laundering as a predicate act under RICO.

**C. State Law Claims**

Finally, the Defendants ask the Court to decline to exercise supplemental jurisdiction over the Plaintiffs' state law claims. Defendants do not seek to argue that the claims are deficient in any way, but argue that the normal practice is to decline supplemental jurisdiction over any remaining state law claims once all federal claims have been dismissed. [DE 32 at 10.] Plaintiffs disagree that the federal claims should be dismissed and, accordingly, believe the Court should continue to exercise supplemental jurisdiction over the state law claims. [DE 56 at 23.]

It is true that this Court may decline to exercise supplemental jurisdiction over pendent state-law claims if the Court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Generally, "when all federal-law claims are dismissed before trial, the pendant claims should be left to the state courts." *Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1252 (7th Cir. 1994). This Court has broad discretion in determining whether to exercise supplemental jurisdiction. *Timm v. Mead Corp.,* 32 F.3d 273, 277 (7th Cir. 1994).

In this case, because the Court is dismissing all of the federal claims with leave to amend those claims, the Court will do the same with Plaintiffs' state law claims. Accordingly, Counts VII, VIII, IX, X, and XI are **DISMISSED** without prejudice, with leave to amend, as described below.

## V. Leave to Amend

As stated above, the Court is dismissing all counts of the currently operative complaint without prejudice. The Court now **GRANTS LEAVE** for Plaintiffs to file an amended complaint within 30 days of this order. That leave, however, is not without limits. Plaintiffs' purported amended complaint sought to add several new claims and several new defendants. The leave to amend granted in this order extends only as to claims against the Defendants named in Plaintiffs' original complaint and to those claims whose factual basis was stated in the original complaint. If Plaintiffs desire to add new claims or new defendants, they must seek leave of the Court to do so.

## VI. Conclusion

Based on the reasons stated above, the Court **GRANTS** the motions to join in the motion to dismiss filed by Mr. Rodino and the Duro Entities [DE 38, 42], **GRANTS** the motion to strike Plaintiffs' Amended Complaint [DE 67], **STRIKES** the Amended Complaint [DE 63], and **GRANTS** the motion to dismiss Plaintiffs' original Complaint [DE 31]. All Counts of the Complaint [DE 1] are **DISMISSED** without prejudice. Plaintiffs are **GRANTED LEAVE** to file an amended complaint within 30 days of this order, consistent with the limitations stated above. If Plaintiffs desire to make any amendments not within the scope of the Court's grant of leave or add any additional parties, they shall file a motion seeking leave to do so.

SO ORDERED.

ENTERED: <u>March 24, 2014</u>

/s/ JON E. DEGUILIO<br>
Judge<br>
United States District Court