# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| AMIT SHAH and TIM DUGLE, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:13-CV-103-JD-JEM |
| | ) | |
| TERRY RODINO, *et al.*, | ) | |
|     Defendants, | ) | |

## OPINION AND ORDER

This matter is before the Court on several discovery motions filed by the parties. On April 6, 2017, Defendants Terry Rodino; Stacey Rodino; Allison Rodino Bailey; Patrick Bailey; Aaron Zou; Apex Pallet, Inc.; Lucky Lou, LLC; 2610, LLC; American Travel Palace, LLC; and ATP Exports, Inc, filed a Motion to Quash Subpoenas [DE 307]. The moving defendants request that the Court prevent Plaintiffs from serving proposed subpoenas on FIA Card Services, Bank of America, and Lake City Bank. On April 19, 2017, Plaintiffs filed their response, and on April 26, 2017, the moving defendants filed their reply.

On May 3, 2017, Plaintiffs filed a Motion for Leave to File Surreply in Opposition to Defendants' Motion to Quash Subpoenas [DE 330], to which the moving defendants filed a response on May 8, 2017. The Court gave the proposed surreply at docket entry 330-1 appropriate weight in deciding the instant Motion to Quash, and will not require Plaintiffs to file the document separately on the docket.

On April 18, 2017, Defendant Terry Rodino[1] filed a Motion for Protective Order [DE 316]. Rodino requests that the Court enter a protective order preventing or limiting discovery sought by Plaintiffs from law firm Defendants Warrick & Boyn and May Oberfel Lorber (the "Law Firm

---

[1] Throughout this Order the Court uses "Rodino" to refer to Defendant Terry Rodino, although there are other Defendants with that name.

Defendants"), who used to represent Rodino and his various companies in this and other cases. On May 4, 2017, May Oberfell Lorber, Georgianne M. Walker, E. Spencer Walton, Jr. (the "May Oberfell Lorber Defendants") filed a Notice of Joinder, joining Rodino in his Motion for Protective Order. On May 5, 2017, Warrick & Boyn LLP, William Haut, and Timothy Shelly (the "Warrick & Boyn Defendants") filed their own Notice of Joinder, also joining Rodino in his Motion for Protective Order. On May 9, 2017, Plaintiffs filed their response, and on May 16, 2017, Rodino filed his reply. On May 31, 2017, the May Oberfell Lorber Defendants filed their own reply, as did the Warrick & Boyn Defendants.

On May 25, 2017, Defendant Scott Mills filed a Motion for Leave to File Documents under Seal Pursuant to N.D. Ind. Local Rule 5-3(c) and Rule 37-1 [DE 343]. Mills requests leave to file documents under seal so that the Court can review them *in camera* and determine whether they are privileged and whether Mills must turn the documents over to Plaintiffs. On May 26, 2017, Rodino filed a response; on June 8, 2017, Plaintiffs filed a response; and on June 15, 2017, Mills filed a reply.

The Court addresses each Motion in turn.

## I. Background

Plaintiffs' Second Amended Complaint – roughly 160 pages long – asserts 70 claims against 22 Defendants. The scope of Plaintiffs' allegations informs the appropriate scope of discovery, a consistent theme throughout the parties' various Motions. *See* Fed. R. Civ. P. 26(b)(1) ( "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ."). Consequently, the Court summarizes the facts of the Second Amended Complaint below, neither taking them as true nor making any findings of fact at this time.

    A.    Formation of the Duro Entities

2

In the late 1990s and early 2000s, Rodino and Plaintiff Tim Dugle formed multiple, related businesses to make, sell, and recycle wood pallets. These entities were Duro, Inc. d/b/a Lee's Wood Products; Duro Recycling, Inc. d/b/a Recycled/New; Duro Realty, Inc.; Duro Transport, Inc. (the "Duro Entities"). In 2003, Rodino suddenly refused to allow Dugle to participate in managing the businesses and stopped paying Dugle his salary, shareholder dividends, and capital investment repayments.

Dugle sold most of his shares in the Duro Entities to Plaintiff Amit Shah in 2004. Rodino tried to prevent the sale by amending the Duro Entities' by-laws with the help of corporate counsel, law firm May Oberfell Lorber and Attorney William Haut of Warrick & Boyn, LLP. Haut was also one of the initial owners of the Duro Entities, but sold his shares to Rodino after the dispute between Rodino and Dugle developed. In 2008, Rodino finally withdrew his objections to the transfer of Dugle's shares to Shah.

To avoid sharing the Duro Entities' profits with Dugle and Shah, Rodino formed separate companies: Apex Pallet, Inc.; Lucky Lou, LLC; and 2610, LLC (the alleged "Shell Companies"). Rodino used the Shell Companies to funnel money out of the Duro Entities. He did so by selling the Duro Entities' pallets through the Shell Companies without paying the Duro Entities or by making fictitious expense payments to the Shell Companies from the Duro Entities' accounts.

Rodino and his family also improperly used money from the Duro Entities' accounts to pay personal expenses, including credit card bills, country club fees, car payments, travel expenses, and cell phone bills. To cover up any inappropriate transactions, Rodino doctored the Duro Entites' books and submitted false tax returns to the IRS. Rodino also made secret out-of-state investments with the Duro Entities' money and used the profits from those investments for personal purposes.

B.  Elkhart County & American Travel Palace

In 2009 and 2010, the Elkhart County Board of Commissioners, led by Rodino as the President of the Board of Commissioners, began a relationship with the Indiana Gateway Fund, a non-profit entity created by Defendant Aaron Zou. The purpose of the Indiana Gateway Fund was to develop foreign business in Elkhart County. The County devoted significant amounts of money to this cause. Rodino and Zou went to China multiple times, purportedly to develop business on the County's behalf.

Shortly after a trip to China, Rodino and Zou created American Travel Palace, LLC, and ATP Exports, Inc. (the "ATP Entities"). The two men used the ATP Entities to purchase RVs manufactured in Elkhart County and to sell them to Chinese companies. According to the Second Amended Complaint, Rodino and Zou reaped a significant benefit from the County's Chinese-business development program. Rodino used some of the Duro Entities' funds to support the ATP Entities' operations. The ATP Entities also made significant payments to some of the Shell Companies for unknown services, and Rodino and Zou each personally received payments from the ATP Entities. Plaintiffs allege that Rodino used his position as an Elkhart County Commissioner to cover up the alleged scheme, and that Zou used another one of his businesses, Aaron, McGregor & Associates, to do the same.

Rodino did not disclose his association with ATP Entities to the County Board of Commissioners, and the County did not investigate Rodino's interests in the ATP Entities. Furthermore, Elkhart County, through IT Director Scott Mills, assisted Rodino in updating the Duro Entities' servers and computers, which Rodino used in operating the Shell Companies and the ATP Entities. Rodino also allegedly used the computers to cover up his fraud, altering accounting files

4

and deleting thousands of incriminating documents. May Oberfell Lorber and Warrick & Boyn allegedly assisted Rodino in covering up his illegal activities.

   C. Litigation

This is not the parties' first time litigating the facts underlying this case, which have been the subject of multiple lawsuits in various courts. Despite these previous lawsuits, the Court found that discovery in this case was appropriate, and entered a Scheduling Order on November 30, 2016. Since then, various discovery disputes have erupted among the parties. The contentious nature of discovery led to this most recent round of Motions.

**III. Motion to Quash**

On April 6, 2017, Defendants Terry Rodino; Stacey Rodino; Allison Rodino Bailey; Patrick Bailey; Aaron Zou; Apex Pallet, Inc.; Lucky Lou, LLC; 2610, LLC; American Travel Palace, LLC; and ATP Exports, Inc, Filed a Motion to Quash Subpoenas [DE 307]. The moving defendants request that the Court prevent Plaintiffs from serving proposed subpoenas on FIA Card Services, Bank of America, and Lake City Bank.

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense." "For the purpose of discovery, relevancy will be construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Rule 45, which governs non-party subpoenas, authorizes the Court to quash any subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). While Rule 45 does not expressly authorize the Court to quash a subpoena seeking irrelevant information, "the

5

reach of a subpoena issued pursuant to [Rule] 45 is subject to the general relevancy standard applicable to discovery under [Rule] 26(b)(1)." *Lee v. City of Elkhart*, No. 2:12-CV-25-TLS-APR, 2013 WL 1754977, at *2 (N.D. Ind. Apr. 22, 2013).

### A. FIA Card Services and Bank of America Suboenas

On March 27, 2017, Plaintiffs served on the moving defendants proposed subpoenas directed to FIA Card Services and Bank of America. In effect, the subpoenas to FIA and Bank of America request all documents concerning any defendant in this case, including the Duro Entities. The moving defendants ask the Court to quash the FIA and Bank of America subpoenas because Plaintiffs already served subpoenas on FIA and Bank of America in June 2016 requesting the exact same documents. The only difference between the June 2016 subpoenas and the March 2017 subpoenas is the date range for responsive documents: the June 2016 subpoenas sought documents from January 1, 2009, through May 31, 2016, while the March 2017 subpoenas seek documents through May 1, 2017.

Plaintiffs argue that the March 2017 subpoenas are not duplicative because Plaintiffs never received any documents from the June 2016 subpoenas. Plaintiffs represent that FIA and Bank of America refused to turn over documents in response to the June 2016 subpoenas because the moving defendants had filed a previous Motion to Quash on July 7, 2017. Defendants ultimately withdrew that Motion, but FIA and Bank of America still did not turn over the requested records. Consequently, Plaintiffs issued the March 2017 subpoenas to finally get the requested records. Plaintiffs argue that because they never received the requested documents, the moving defendants' duplication argument is inapposite and therefore the Court should deny the Motion to Quash and award fees to Plaintiffs. Because they now know that Plaintiffs did not receive any documents from

6

the June 2016 subpoenas, the moving defendants concede that the duplication argument is a bad one. However, the moving defendants assert that they had no way of knowing that Plaintiffs never received all the documents requested from FIA and Bank of America in response to the June 2016 subpoenas, largely because of a breakdown in effective communication between the parties. Plaintiffs blame this breakdown on the moving defendants' failure to confer good faith before filing their Motion to Quash. If the moving defendants had conferred with them before filing the Motion to Quash, Plaintiffs argue, Plaintiffs would have told them that no discovery had yet been received from FIA and Bank of America.

Northern District of Indiana Local Rule 37-1 requires parties to file a certification that the moving party conferred (or attempted to confer) in good faith *before* filing a discovery motion, but the moving defendants filed no such certification until their reply brief. N.D. Ind. L.R. 37-1(a). Despite this failure, the Court finds that the moving defendants complied with the spirit of the requirement. They attempted to confer with Plaintiffs concerning the FIA and Bank of America subpoenas in a March 31, 2017, letter objecting to the subpoenas as duplicative, but Plaintiffs never responded to this letter. Fearing that Plaintiffs had sent out the FIA and Bank of America subpoenas on April 5, 2017 – the date Plaintiffs said they were going to serve them – the moving defendants filed the instant Motion to Quash. On April 12, 2017, when counsel for the moving defendants spoke with Plaintiffs' counsel about this dispute, Plaintiffs' counsel failed to mention that FIA and Bank of America never responded to the previous subpoenas or otherwise give counsel to address the question of their duplicativeness without court intervention.

Accordingly, while the Court will not quash the FIA and Bank of America subpoenas, it also will not order the moving defendants to pay Plaintiffs' fees incurred in responding to the Motion to Quash. Plaintiffs could have easily avoided those costs if they had simply communicated with opposing counsel, making an award would be unjust. *See* Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5)(B); Fed. R. Civ. P. 37(a)(5)(C).

B. <u>Lake City Bank Subpoena</u>

On March 27, 2017, Plaintiffs also served on the moving defendants a proposed subpoena for non-party Lake City Bank. The Lake City subpoena seeks all documents concerning North America Vehicle Co., LLC, a company wholly-owned by Zou and formed in September 2012. The moving defendants argue that North America Vehicle has nothing to do with this lawsuit, and that Plaintiffs should be prevented from rifling through documents that have no relevance to this litigation.

Plaintiffs argue that the records sought from Lake City concerning North America Vehicle are relevant to their RICO claims, which largely rely on allegations of money laundering. While North America Vehicle appears nowhere in Plaintiffs' Second Amended Complaint, Plaintiffs say its bank records are relevant because Zou may have used it to "further conceal illegal business transactions developed by Zou and Rodino in China." Plaintiffs argue that ATP Exports (another Zou business) received roughly $24,000 from two Chinese businesses in August 2012, and because Aaron, McGregor & Associates (another Zou business) invested roughly the same amount of money at roughly the same time in North America Vehicle, North America Vehicle's records are relevant to this lawsuit.

Despite Plaintiffs' arguments, North America Vehicle's records are not relevant to this litigation, even considering the extremely low bar for relevance. *See Chavez*, 206 F.R.D. at 619. Plaintiffs assert their claims as shareholders of the Duro Entities. However, Plaintiffs offer absolutely no link between the Duro Entities' money and North America Vehicle. Plaintiffs' Second Amended Complaint alleges that Rodino took money from the Duro Entities, funneled it through Apex Pallet, and invested it in American Travel Palace. Plaintiffs fail to explain how the sets of transactions between the Chinese businesses and ATP Exports, and between Aaron McGregor and North America Vehicle related in any way to the money taken from the Duro Entities.

To the extent Plaintiffs seek North America Vehicle's bank records to show an overarching pattern of rackteering activity committed by Zou and Rodino, the requested records are not relevant to that inquiry. Neither Aaron McGregor nor North America Vehicle is alleged as the "enterprise" within which the alleged pattern of racketeering activity occurred. *See Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)) ( "[A RICO] plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."). The Second Amended Complaint does allege that Zou used Aaron McGregor to conceal his alleged fraud and money laundering. However, a transaction between Aaron McGregor and North America Vehicle Co., though it roughly parallels a transaction involving one of the alleged RICO enterprises (ATP Exports), is simply too remote a connection to allow such broad access to North America's records.

Indeed, "the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.* at *8 (internal citations and quotation marks omitted). "[T]he information [sought in discovery] must be

9

reasonably calculated to lead to the discovery of admissible evidence." *Zenith Elecs. Corp. v. ExZEC, Inc.*, 1998 U.S. Dist. LEXIS 215, at *8 (N.D. Ill. Jan. 2, 1998) (internal citations and quotation marks omitted). To be sure, Plaintiffs' RICO claims are expansive. Their 160-page, 70-Count Second Amended Complaint alleges far reaching conduct. Discovery, though, remains limited to those claims that Plaintiffs have actually alleged. As mentioned, North America Vehicle does not appear anywhere in the Second Amended Complaint, and the information provided by Plaintiffs does not sufficiently link North America Vehicle's bank records to this lawsuit.

Accordingly, the Lake City Bank discovery is irrelevant and inappropriate under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(1).

C. <u>Fees</u>

Because the Court grants in part the relief requested by the moving defendants in their Motion to Quash, the Court will consider argument regarding payment of reasonable expenses incurred in the Motion to Quash only as it concerns the Lake City Bank Subpoena. *See* Fed. R. Civ. P. 37(a)(5)(C). For the reasons discussed above, an award of expenses to Plaintiffs for defending against the unsuccessful portions of the Motion to Quash is unjust. Should the parties come to an agreement regarding an appropriate amount, they may file with the Court a notice of stipulation before the briefing deadline.

**IV.     Motion for Protective Order & Motion for Leave to File Under Seal**

On April 18, 2017, Rodino filed a Motion for Protective Order [DE 316]. Rodino requests that the Court enter a protective order preventing or limiting discovery sought by Plaintiffs from the Law Firm Defendants, Warrick & Boyn and May Oberfel Lorber, firms that provided past legal representation to Rodino and his various companies. Relatedly, Defendant Scott Mills filed a Motion

10

for Leave to File Documents Under Seal [DE 343]. Mills represents that he has emails between Rodino and May Oberfel Lorber in his posession and asks that he be allowed to submit them to the Court for *in camera* review before turning them over to other parties.

   A. Protective Order

On January 10, 2017, Plaintiffs served requests for production of documents on Defendants May Oberfell Lorber, E. Spencer Walton, and Georgianne Walker, and also served requests for production of documents on Defendants Warrick & Boyn, LLP, William Haut, and Timothy Shelly. Both contain the same Request No. 20, demanding production of "All documents (draft, final, or duplicate), records (draft, final, or duplicate), and/or electronically stored information regarding or related in any way to the defendants named in the Complaint."

Rodino objects to these requests because both Warrick & Boyn and May Oberfell Lorber provided legal representation to him in this case as well as in previous cases among the various parties. Rodino argues that most, if not all, of the documents requested are covered by the attorney-client privilege. The Law Firm Defendants joined Rodino's Motion asserting that it would be burdensome for Rodino's counsel to review roughly thirteen years of documents to determine which are privileged and which are not.

Plaintiffs argue that Rodino's counsel has not produced a privilege log, and thereby waives all objections to production of the documents. Similarly, Plaintiffs argue that Rodino cannot assert a blanket attorney work product privilege. These assertions, while not inaccurate representations of the relevant law on their face, fail to address the larger picture. In issuing their discovery requests, Plaintiffs must "describe *with reasonable particularity* each item or category" of documents requested. Fed. R. Civ. P. 34(b)(1)(A) (emphasis added). However, Plaintiffs issued discovery

11

requests to the Law Firm Defendants asking for every scrap of paper relating in any way to any defendant in this case, knowing that much of the material in the law firms' files is protected from disclosure. That kind of request demonstrates little, if any, "reasonable particularity," and so the Court need not reach the question of privilege. To require Rodino and the Law Firm Defendants to review every single document in their files in any way related to any defendant in order to determine which are responsive and which are subject to which type of privilege would essentially gut Rule 34(b)'s reasonable particularity requirement and Rule 26(c)'s authorization to protect parties from "undue burden or expense." Rodino and the Law Firm Defendants have demonstrated good cause for an order that the Law Firm Defendants need not comply with Plaintiffs' Request Number 20. *See* Fed. R. Civ. P. 26(c).

The discovery period remains open, and Plaintiffs are free to make new, targeted requests for documents. The Court reminds Plaintiffs that a "demand for an entire [client] file cannot meet the requirement of good cause for production of materials" when those materials are likely covered by the attorney-client privilege; instead, good cause requires "(1) a showing that a specific item of evidence exists; (2) that it is not otherwise available to a party; (3) and that it is necessary for the party's preparation for trial." *Anderson v. Torrington Co.*, 120 F.R.D. 82, 87 (N.D. Ind. 1987). Furthermore, shareholders asserting derivative claims against corporate counsel, such as Plaintiffs, must show good cause for overcoming any attorney-client privilege between the entity and its attorneys. One factor for good cause is "whether the communication is of advice concerning the litigation itself." *Chill v. Calamos Advisors, LLC*, No. 17-C-1658, 2017 WL 1478123, at *2 (N.D. Ill. Apr. 25, 2017) (citations omitted).

C. Mills's Request to File Emails

Defendant Mills requests that he be allowed to file approximately forty-four pages of emails for *in camera* review. Mills represents that these emails were forwarded to him by Rodino and May Oberfell Lorber in the early stages of litigation. Plaintiffs are demanding production of these emails while Rodino is threatening sanctions if Mills turns them over to Plaintiffs since the emails may be privileged. Mills proposes that he file the emails with the Court to review *in camera*, allowing parties who assert privilege in those emails to brief the issue for the Court. Plaintiffs object to this procedure and say that the at-issue emails are not privileged. However, the Court will make that determination after reviewing the emails. *See Muro v. Target Corp.*, No. 04-C-6267, 2006 WL 3422181, at *1 (N.D. Ill. Nov. 28, 2006) (determining whether attorney-client privilege applied to eighty-nine documents after reviewing the documents *in camera*). Accordingly, Defendant Mills will file the emails and the Court will review them *in camera*. Any party asserting a privilege in the at-issue emails may file a brief supporting the claimed privilege by the deadline described below.

**V.  Conclusion**

Fore the foregoing reasons, the Court hereby **GRANTS in part and DENIES in part** Defendants Terry Rodino, Stacey Rodino, Allison Rodino Bailey, Patrick Bailey, Aaron Zou, Apex Pallet, Inc., Lucky Lou, LLC, American Travel Palace, LLC; and ATP Exports, Inc.'s Motion to Quash Subpoenas [DE 307]. The Court **QUASHES** the subpoena Plaintiffs propose to serve on Lake City Bank. The Court also **GRANTS** Plaintiffs' Motion for Leave to File Surreply in Opposition to Defendants' Motion to Quash Subpoenas [DE 330] and gave appropriate weight to Plaintiffs' surreply.

Because the Court grants the moving defendants' Motion to Quash in part, the Court **ORDERS** the moving defendants to file an itemization of their reasonable expenses incurred in making the Motion to Quash by no later than **July 7, 2017**. Plaintiffs may respond to the itemization by no later than **July 14, 2017**. No reply is to be filed. As described above, Plaintiffs are not entitled to recoup fees for defending against the Motion to Quash.

The Court **GRANTS** Defendant Terry Rodino's Motion for Protective Order [DE 316] and **ORDERS** that the Law Firm Defendants need not respond to Plaintiffs' Request No. 20. Because the Court grants the Motion for Protective Order, the Court **ORDERS** Defendant Rodino to file an itemization of his reasonable expenses incurred in making the Motion for Protective Order along with argument as to why those expenses are reasonable in this situation by **July 7, 2017**. Plaintiffs may respond to the itemization by **July 14, 2017**. No reply is to be filed.

The Court **GRANTS** Defendant, Scott Mills' Motion for Leave to File Documents under Seal Pursuant to N.D. Ind. Local Rule 5-3(c) and Rule 37-1 [DE 343] and **ORDERS** Defendant Mills to file the at-issue emails on the docket, *ex parte*, by **July 7, 2017**. The Court **REMINDS** Defendant Mills of the need to comply with the Northern District of Indiana Local Rules and CM/ECF User Manual when filing the emails under seal and *ex parte*. If Defendant Mills prefers, he may file hard copies of the emails with the Court. Any party asserting a privilege in the at-issue emails may file a brief supporting that claim by no later than **July 14, 2017**.

SO ORDERED this 20th day of June, 2017.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record