UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMIT SHAH, TIM DUGLE, DURO, INC. d/b/a/ Lee's Wood Products, DURO RECYCLING, INC. d/b/a Recycled/New, DURO REALTY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WARRICK & BOYN, LLP, WILLIAM HAUT, TIMOTHY SHELLY, MAY OBERFELL LORBER, E. SPENCER WALTON, JR., GEORGIANNE M. WALKER,<br><br>Defendants. | Case No. 3:13-CV-103 JD |

## ORDER

Plaintiffs in this matter include several corporations, collectively referred to as the "Duro Entities," and Amit Shah and Tim Dugle, who were shareholders of the Duro Entities. Plaintiffs' Third Amended Complaint [DE 408] consists of three claims against two law firms and four attorneys within those firms that served as counsel for the Duro Entities. Count 1 alleges a legal malpractice claim on behalf of all plaintiffs against all six defendants. Count 2, which is titled "Conflicts of Interest," alleges a second cause of action on behalf of all plaintiffs against all six defendants. Count 3 alleges a claim on behalf of the Duro Entities against one defendant, the law firm of May Oberfell Lorber ("MOL"), for conspiracy to violate the Computer Fraud and Abuse Act ("CFAA").

Now before the Court are Partial Motions to Dismiss by defendants E. Spencer Walton, Jr., Georgianne M. Walker, and MOL [DE 415] and by defendants William Haut, Timothy Shelly, and Warrick & Boyn, LLP [DE 419]. The Court referred these motions to the magistrate

judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). Thus, Magistrate Judge John E. Martin prepared a Report and Recommendation in which he recommended that the motions be denied in part and granted in part. In particular, he concluded that: relative to Count 1, plaintiffs do not claim that Shah or Dugle were ever clients of the defendants; and thus, Count 1's legal malpractice claim should be dismissed as to these individuals; relative to Count 2, it should be dismissed in its entirety because no cause of action exists for a "Conflict of Interest;" rather, the factual allegations may be used to support the legal malpractice claim asserted in Count 1; and, relative to Count 3, it should not be dismissed because the allegations are sufficient to sustain a CFAA conspiracy claim against MOL at this stage of the proceedings. The Report and Recommendation was entered on the docket on December 3, 2018, giving the parties through December 18, 2018, to file any objection, pursuant to Fed. R. Civ. P. 72(b)(2). Only a single objection with respect to Count 3 was raised by defendants concerning whether Count 3 fails to state a claim for conspiracy to violate the CFAA against MOL.

**Standard of Review**

After referring a dispositive motion to a magistrate judge, a district court has discretion to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1). Consistent with Federal Rule of Civil Procedure 72(b), the district court must undertake a de novo review "only of those portions of the magistrate judge's disposition to which specific written objection is made." *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (citing *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995)). If no objection or only a partial objection is made, the court reviews those unobjected portions for clear error. *Id*. Under the clear error standard, a court will only overturn a magistrate judge's

ruling if the court is left with "the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

Given the defendants' objection to the magistrate judge's recommendation as to Count 3, the Court evaluates the sufficiency of the conspiracy claim *de novo*, while the unobjected portions are reviewed for clear error. In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiffs, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiffs' favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, plaintiffs' claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether plaintiffs' claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

## Discussion

**Count 1: Legal Malpractice**

To sustain a claim for legal malpractice, one of the elements that the plaintiffs must prove is the "employment" of the attorney, which creates a duty to the client. *Solnosky v. Goodwell*, 892 N.E.2d 174, 181 (Ind. Ct. App. 2008) (citing *Clary v. Lite Mach. Corp.*, 850 N.E.2d 423,

430 (Ind. Ct. App. 2006)). Plaintiffs do not claim that Shah or Dugle were defendants' clients, (and in fact, unsuccessfully offered to voluntarily dismiss the individual plaintiffs if defendants would agree not to later add them as real parties in interest) [DE 428 at 13; DE 429 at 6]. Accordingly, the Court adopts the magistrate judge's unopposed recommendation that Count 1 be dismissed as to Shah and Dugle.

**Count 2: Conflict of Interest**

Defendants seek to dismiss Count 2 in its entirety, arguing that there is no recognized separate cause of action for a "Conflict of Interest." In their responses, plaintiffs admit that while they labeled Count 2 "Conflicts of Interest," they are actually asserting a malpractice claim, which is "*evidenced* by [Defendants'] failure to comply with the Indiana Rules of Professional Conduct's conflict of interest guidelines." [DE 428 at 4; DE 429 at 4] (emphasis in original).

Despite plaintiffs' explanation, the allegations in Count 2 are set apart and read as a separate cause of action, even though they cannot create an independent claim. *Bilbija v. Lane*, No. 1:16-cv-02124-TWP-MJD, 2018 WL 2183967, at *4 (S.D. Ind. May 10, 2018) (dismissing a claim for conflict of interest despite plaintiffs' argument that the alleged conflict supports a finding of legal malpractice and holding that "the facts and arguments . . . may be used to bolster [plaintiffs' remaining] claim for legal malpractice") (citing *Rosenbaum v. White*, 692 F.3d 593, 604 (7th Cir. 2012); *Liggett v. Young*, 877 N.E.2d 178, 183 (Ind. 2007)). Accordingly, the Court adopts the magistrate judge's unopposed recommendation that Count 2 be dismissed, but the allegations therein may be used to support the legal malpractice claim asserted in Count 1 by the Duro Entities.

**Count 3: Conspiracy to Violate the CFAA**

Defendants seek dismissal of Count 3, which alleges a conspiracy to violate the

CFAA on behalf of the Duro Entities against MOL. In the motion to dismiss and objection to the magistrate judge's conclusion regarding Count 3, defendants argue that plaintiffs failed to sufficiently plead the "who, what, when, why, and how" of the conspiracy; that consistent with *Domanus v. Locke Lord LLP*, 847 F.3d 469 (7th Cir. 2017), merely providing legal services fails to support a plausible inference of a conspiracy; and, plaintiffs pled themselves out of court by claiming that MOL learned of the CFAA violation after the fact. The Court respectfully disagrees with defendants.[1]

Generally, defendants violate the CFAA when they conspire to "knowingly and with intent to defraud, access[] a protected computer without authorization, or exceed[] authorized access . . . further[ing] the intended fraud" or "knowingly cause[] the transmission of a program, information, code, or command . . . intentionally caus[ing] damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(4), (a)(5), (b). To sustain a CFAA conspiracy claim, plaintiffs must plead "specific allegations of an agreement and common activities." *In re: Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *6 (N.D. Cal. Oct. 27, 2016); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 835 (N.D. Cal. 2014). This requirement includes "sufficient factual particularity that defendants reached some tacit or explicit understanding or agreement" to commit the unlawful act. *NetApp, Inc.*, 41 F. Supp. 3d at 835.

In this case, plaintiffs have adequately pled a conspiracy to violate 18 U.S.C. § 1030. Plaintiffs allege that MOL conspired with Terry Rodino, former shareholder of the Duro Entities, to engage in spoliation of evidence on the Duro Entities' computers. First, plaintiffs allege that

---

[1] To the extent defendants also argue that plaintiffs failed to separately set forth the allegations that comprise the claim, the Court rejects such a contention because the Third Amended Complaint plainly describes a separate claim for relief, while putting defendants on notice of the facts alleged in support of the conspiracy claim. *See* Fed. R. Civ. P. 8 and 10(c).

MOL served as counsel to Rodino and his family members (including for purposes of their business interests), in addition to the Duro Entities, but concealed the concurrent representation by stating that MOL only represented the Duro Entities. In response to a court order requiring the production of certain financial documents, plaintiffs allege that MOL and Rodino prevented the production and review of documents on the Duro Entities' computers. Plaintiffs allege that several minority shareholders sent a letter to the Duro Entities accusing MOL and Rodino, directly, of spoliation, and that MOL responded to that letter, purporting to justify the deletion of thousands of electronically stored documents. Plaintiffs allege that MOL repeatedly lied on Rodino's behalf to cover up the alleged spoliation. Plaintiffs also allege that MOL failed to investigate the claim that MOL and Rodino engaged in spoliation, despite its representations that it had investigated.

The allegations of the Third Amended Complaint strongly support an inference of some understanding or agreement between MOL and Rodino about what would happen to the relevant documents, *prior to* their allegedly improper deletion. Moreover, the factual assertions made specifically: set forth a type of agreement to engage in anticompetitive behavior while attempting to conceal the same, provide dates for when and explain how certain conduct in furtherance of the agreement is believed to have occurred; and, identify those believed to be involved in the conduct. At this point in the proceedings, little else is required to state a plausible claim for relief as defendants are on notice of the alleged conduct that violated the statute and the type of damage it caused. *See, e.g., Integrated Bus. Techs., LLC v. Netlink Sols., LLC*, No. 16-CV-048-TCK-PJC, 2016 WL 4742306, at *6 (N.D. Okla. Sept. 12, 2016). Nor does *Domanus v. Locke Lord LLP*, 847 F.3d 469 (7th Cir. 2017), require a different result. In that case, the lawyers' allegedly inappropriate billing practices and knowledge of "allegations" lodged against their

clients were insufficient to make it at least plausible that the lawyers actually knew about the underlying conspiracy. Whereas here, the allegations of the Third Amended Complaint don't just support the inference that MOL should have known (and did know) about the fraudulent activity; rather, the facts as pled would support MOL's actual participation in it.

MOL also argues that plaintiffs cannot state a claim for conspiracy, because they alleged in Count 1 that "[s]ince learning that Mr. Rodino destroyed financial data from the Duro Entities' computers, the Defendant Law Firms failed to take reasonable and necessary steps to mitigate the harm caused by the loss of evidence." MOL contends that this statement precludes a claim of conspiracy because it implies that MOL learned of any CFAA violation only after the data was destroyed. But even if at some point MOL "learned" that Rodino destroyed financial data, this would not preclude an inference that MOL had a prior understanding or agreement with Rodino to engage in fraud, which is the crux of a CFAA conspiracy claim.

Finally, it appears that defendants rely on *Marquette Bank v. Brown*, No. 4:14-CV-00034-SEB, 2015 WL 1505685, at *7 (S.D. Ind. Mar. 31, 2015), for the proposition that because MOL was counsel for Rodino, they could not have conspired together by virtue of their principal-agent relationship. However, *Marquette Bank v. Brown*, involves principles of intracorporate conspiracy law, such that a corporation can only act through its agents. That is not to say that clients of a law firm, who do not work for the firm, cannot form a conspiracy with the firm.

## Conclusion

Accordingly, the Court OVERRULES the objection [DE 438] and ADOPTS the Report and Recommendation [DE 437] in its entirety; and thus, GRANTS in part and DENIES in part the Partial Motions to Dismiss [DE 415; DE 419], as follows: Count 1 is DISMISSED as to the

individuals, Shah and Dugle, but remains pending as to the other plaintiffs; Count 2 is DISMISSED as an independent cause of action, while its factual allegations may be used to support Count 1; and, Count 3 remains pending against MOL by the Duro Entities.

SO ORDERED.

ENTERED: March 25, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court